UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| DANDREE BLACK, # 193803, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:14-cv-22 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| LLOYD RAPELJE, | ) | **OPINION** |
| | ) | |
| Respondent. | ) | |

This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254.  On February 16, 2012, a Muskegon County Circuit Court jury found petitioner guilty of assault with intent to do great bodily harm less than murder. The trial court judge sentenced petitioner as an habitual offender, fourth felony offense, to eleven to forty years' imprisment.

After unsuccessful attempts to overturn his conviction and sentence in state court, petitioner filed this habeas corpus petition.  Petitioner seeks federal habeas corpus relief on the following grounds:

I.    The trial court violated petitioner's due process, equal protection, and other protected rights when it denied petitioner's motion to suppress the statements that he gave to the police.

II.   The trial court violated petitioner's due process, equal protection, and other protected rights when it permitted the use at trial of the preliminary examination testimony provided by Pamela Gathers.

III.    The trial court violated petitioner's Sixth Amendment rights when it denied the motion for appointment of new counsel that petitioner made on the first day of his trial.

IV.     The trial court committed error in sentencing petitioner under Michigan's Sentencing Guidelines when it scored 10 points on offense variable OV-9.

V.      The trial court committed error in sentencing petitioner to 11 to 40 years' imprisonment as an habitual offender, fourth felony offense.

VI.     The trial court violated petitioner's due process, equal protection, and other protected rights by not instructing the jury on missing evidence and by overruling an objection to the flight instruction given.

VII.    Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated because the evidence at trial was insufficient to support the jury's verdict finding petitioner guilty of assault with intent to do great bodily harm less than murder.

VIII.   The Michigan Court of Appeals committed error in denying petitioner's motion for remand.

IX.     The Michigan Court of Appeals committed error in denying petitioner's motion for oral argument.[1]

(Amended Petition, ECF No. 8, PageID.273-328).

Respondent argues that all grounds raised by petitioner lack merit.  (ECF No. 16).  In addition, respondent argues that Grounds IV, V, VII, and "a portion of Ground VI" are barred by procedural defaults and petitioner has not established

---

[1]The extraordinary remedy of habeas corpus lies only for a violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner's references to the Michigan constitution have been disregarded because they cannot provide a basis for granting federal habeas corpus relief.

grounds to overcome those defaults. (*Id.* at 5, 44-47, 59-60, 70-71, 78-79, 95, PageID.348, 387-90, 402-03, 413-14, 421-22, 438).

After review of the state-court record, the Court finds that petitioner has not established grounds for federal habeas corpus relief.[2]  The petition will be denied.

## <u>Standard of Review</u>

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

---

[2]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Parker v. Matthews*, 132  S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal."  *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions.  *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.").  "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).  Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, []

circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## <u>Findings of Fact</u>

### A.    District Court Proceedings

Petitioner was charged with assault with intent to do great bodily harm less than murder and being an habitual offender, fourth felony offense. (ECF No. 17-1, PageID.449; ECF No. 17-10, PageID.1076). He received a preliminary examination in the 60th District Court for Muskegon County. (ECF No. 17-2). Ms. Pamela Gathers gave testimony describing how petitioner attacked his brother, Robert Bateman, with a crowbar. Mr. Bateman was unarmed. Petitioner hit Bateman in the face multiple times with a crowbar. Bateman was hospitalized and spent four days in a coma. (*Id.* at 4-30, PageID.457-83). Judge Michael Nolan found probable cause that the crime of assault with intent to do great bodily harm less than murder had been committed and

that it had been committed by petitioner.  He bound over petitioner for trial in Muskegon County Circuit Court.  (*Id.* at 30, PageID.483).

### B.    Circuit Court Proceedings

On February 6, 2012, Judge James Graves conducted a hearing on petitioner's motion to suppress statements that he made to Officer Chad Van Dam.  (ECF No. 17-3). Judge Graves heard testimony from Officer Van Dam (*Id.* at 4-12, PageID.489-97) and petitioner (*Id.* at 12-19, PageID.497-504).   Judge Graves found no constitutional violation: "[T]here was no violation of any *Miranda* rule, because I think the Defendant just volunteered the statements and just started opening up and talking about things because he chose to do so.  And these statements were not in response to any questions asked by Officer Van Dam, thus there was no violation of *Miranda* because there was no questioning."  (*Id.* at 22, PageID.507).

On February 13, 2012, Judge Graves conducted a hearing on the prosecution's motion to declare witness Pamela Gathers as unavailable for trial.  (ECF No. 17-4).  The Judge took the matter under advisement and wanted to take a closer look at the preliminary examination transcript in order to determine the adequacy of counsel's opportunity to cross-examine Ms. Gathers.  (*Id.* at 10-11, PageID.518-19).

Petitioner's trial began on February 14, 2012, and it ended with the jury's verdict on February 16, 2012, finding petitioner guilty of assault with intent to do great bodily harm less than murder.  (Trial Transcripts (TT I to TT III), ECF No. 17-5 to 17-7).

On the morning petitioner's trial was set to begin, petitioner indicated that he wanted his attorney to withdraw.  (TT I, 3, ECF No. 17-5, PageID.523).  Petitioner claimed that his attorney had an unspecified conflict of interest, was biased, and told petitioner that he was a liar.  Petitioner complained that he "might as well be fighting against two prosecutors."  (TT I, 4, PageID.524).  The judge reminded petitioner that like a doctor, an attorney must be honest with his client, which often means delivering "bad news" that the client "may not want to hear."  (TT I, 5, PageID.525).  Petitioner apparently disagreed with his attorney's trial strategy.  The attorney recommended that petitioner not testify.  He gave reasons why it would not be a "smart move" for petitioner to testify.  The court explained to petitioner that the decision whether to testify would be up to petitioner.  Petitioner's attorney was merely advising him on what he believed to be the best course of action.  In addition, the court advised petitioner that he would not be provided with a substitute attorney simply because petitioner decided to manufacture tension with his attorney by using filthy names and profanity towards his lawyer.  Petitioner's motion was also denied because it was untimely.  (TT I, 457, PageID.525-27).

The preliminary examination testimony of Pamela Gathers was read to the jury.[3] (TT II, 27-31, PageID.746-51).  The jury heard the 911 recording stemming from this incident.  (TT II, 32-41, PageID.752-61).  A paramedic testified regarding what she observed when she arrived at the scene and the medical care that she provided to Mr. Bateman.  (TT II, 42-56, PageID.762-76).  A police officer testified regarding what she observed at Mr. Bateman's West Webster Avenue apartment.   (TT II, 82-106, PageID.802-26).  Phillip Ashendorf testified regarding petitioner's actions during the date in question, including borrowing Ashendorf's crowbar, returning it minutes later, and telling Ashendorf to hide the crowbar and not to tell anyone.  (TT II, 57-81, PageID.777-801).  An emergency room physician testified regarding the extensive and critical head injuries that Robert Bateman suffered.  The injuries were not consistent with Mr. Bateman falling into a table.  (TT II, 153-68, PageID.873-88).

Officer Chad Van Dam testified that he had been dispatched to the West Webster Avenue Apartment with a basic description of the suspect and a description of his means of transportation – a purple bicycle.  (TT II, 107-09, PageID.827-29).  A few blocks away from Bateman's apartment, Officer Van Dam saw petitioner pushing a purple bicycle. When Officer Van Dam stopped his car and started to get out, petitioner volunteered incriminating statements that he had been in a fight with his brother.  Petitioner gave

---

[3]A detective testified regarding the unsuccessful effort to locate the witness and compel her appearance at petitioner's trial.  (TT II, 170-73, ECF No. 17-6, PageID.890-93).

one version of events claiming that he pushed his brother and that his brother hit his forehead on the table which caused a laceration. (TT II, 109-11, PageID.829-31). In another version, petitioner claimed that he had been assaulted by Mr. Bateman and that Mr. Bateman had punched all over his body. Officer Van Dam saw no injuries or marks on petitioner indicating that he had been in such an altercation. Petitioner pointed out a scratch on his right bicep, but it appeared to be an old injury. (TT II, 111-12, PageID.831-32). A third version supplied was that Mr. Bateman was so drunk that he tripped over his own feet and fell into the table, causing his head wound. Petitioner never claimed that Mr. Bateman had attacked him while armed with a knife or other weapon. Petitioner never claimed that Mr. Bateman had been beating up Ms. Gathers. (TT II, 112-13, PageID.832-33).

Robert Bateman was a reluctant witness. (TT I, 151-87, PageID.671-707; TT II, 10-26, PageID.730-46). He testified that he did not remember having an argument with petitioner or getting into a physical altercation. (TT I, 154-55, PageID.674-75). He did not recall picking up a knife. (TT I, 159, PageID.679). He testified that he remembered his brother forcing his way into the apartment and the next thing he remembered was waking up in the hospital. (TT I, 158-61, PageID.678-80). Later in response to questions from petitioner's attorney, Mr. Bateman testified that he did recall having a knife. (TT II, 10, PageID.730). He stated that he threatened his brother with the knife. (TT II, 12, PageID.732). Mr. Bateman stated that he "fabricated a little bit" in his earlier testimony that he did not recall whether he had a knife or not. (TT II, 13,

PageID.733). Mr. Bateman denied that he was trying to structure his testimony to protect his brother. (TT II, 18, PageID.209). Mr. Bateman subsequently offered testimony that he saw his brother with the crowbar in his hand and he was coming straight at Mr. Bateman. (TT II, 21-22, PageID.741-42). He testified that he grabbed a knife because petitioner was coming at him with a crowbar. (TT II, 22-23, PageID.742-43).

Officer Justin Sunday testified that he read petitioner his *Miranda* rights. Petitioner elected to waive those rights and gave a statement to the police. Petitioner's jury heard the recording of this interview. Petitioner claimed that he never had a crowbar and that Mr. Bateman never had a weapon. (TT II, 123-48, PageID.843-68).

Petitioner elected to testify. (TT II, 174-87, PageID.894-907). The summary of his testimony provided by the Michigan Court of Appeals is accurate. (*See* Op. at 2, ECF No. 17-10, PageID.1068). As anticipated by defense counsel, petitioner faced extensive cross-examination regarding the various versions of events that he had supplied. (TT II, 188-204, PageID.908-24; TT III, 10-51, PageID.938-79).

On February 16, 2012, the jury found petitioner guilty of assault with intent to do great bodily harm less than murder. (TT III, 118, PageID.1046).

On March 13, 2012, Judge Graves conducted a sentencing hearing. (ECF No. 17-8). Petitioner advised Judge Graves that he had reviewed the presentence report and the sentencing guidelines sheet and discussed them with his attorney. Petitioner informed the court that he did not have any proposed additions or corrections to those

-11-

documents.  (*Id.* at 3-4, PageID.1053-54).  Judge Graves described the prior felony

convictions that supported sentencing petitioner as an habitual offender, fourth felony

offense.  Petitioner had previously been convicted of the felonies of unarmed robbery,

prisoner in possession of contraband, unlawful driving away of a motor vehicle  (*Id.* at

5-6.  PageID.1055-56).  Petitioner had a "very lengthy criminal history."  (*Id.* at 7,

PageID.1057).  The presentence report noted that this was petitioner's "9th felony

conviction," (ECF No. 17-11, PageID.1499).  Petitioner asked the trial court to impose

a lenient sentence because he was "the father of two and a grandfather of three"

children.  (ECF No. 17-8 at 6, PageID.1056).  Judge Graves sentenced petitioner to

eleven to forty years' imprisonment, with no credit for time served because petitioner

was on parole when he committed this crime.  This sentence was consecutive to the

parole sentence.  (*Id.* at 7, PageID.1057; Judgment of Sentence Commitment to

Corrections Department, ECF No. 17-10, PageID.1077).

## B.   Subsequent Proceedings

Petitioner pursued an appeal in the Michigan Court of Appeals.  Petitioner's

appellate counsel raised the issues corresponding to Grounds I through VI of his habeas

corpus petition.[4] (Defendant-Appellant's Brief, Statement of Questions Presented, ECF

---

[4]In addition, appellate counsel filed a motion asking the Michigan Court of
Appeals to remand the case back to the trial court.  (ECF No. 17-10, PageID.1145-60).
On February 1, 2013, the Michigan Court of Appeals denied the motion.  (*Id.* at
PageID.1246).  Appellate counsel filed a motion requesting oral argument, which was
denied.  (*Id.* at PageID.1262-68, 1279).  Ground VIII and IX are petitioner's claims that
the Michigan Court of Appeals committed error in denying these motions.

No. 17-10, PageID.1099-1101).  Petitioner filed a *pro se* brief raising the issues found in Ground VII where he challenges the sufficiency of the evidence to support his conviction for assault with intent to do great bodily harm less than murder and claims that defense counsel was ineffective for failure to move for a directed verdict.  (Standard 4 Brief, Statement of Question Presented, ECF No. 17-10, PageID.1252).  On June 25, 2013, the Michigan Court of Appeals entered its decision rejecting the arguments raised on appeal and affirming petitioner's conviction and sentence.   (ECF No. 17-10, PageID.1067-74).   On December 23, 2013, the Michigan Supreme Court denied petitioner's application for leave to appeal.  (ECF No. 17-11, PageID.1270).

On January 9, 2014, petitioner filed his habeas corpus petition.  (ECF No. 1).  On March 17, 2014, petitioner filed his amended petition.  (ECF No. 8).

## Discussion

### I.  Petitioner's Statements to Officer Van Dam

In Ground I, petitioner argues that the trial court violated his constitutional rights when it denied his motion to suppress the statements that he gave to Officer Chad Van Dam.  Petitioner argues that Michigan's courts committed error when they found that he was not in custody when he made his statement to Officer Van Dam and that he volunteered the statements rather than being questioned. (Amended Petition, ECF No. 8, PageID.275-79; *see also* Defendant-Appellant's Brief on Appeal at 11-15, ECF No. 17-10, PageID.1112-16).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, a custodial interrogation must be preceded by warnings of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000). If an individual is not "in custody," *Miranda* and its progeny do not apply. *Bobby v. Dixon*, 565 U.S. 23, 28 (2011). Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the holding in *Miranda. Miranda*, 384 U.S. at 478; *accord United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003); *Wells v. Lafler*, No. 2:10-cv-10191, 2013 WL 757620, at * 6 (E.D. Mich. Feb. 28, 2013).

The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective:

> As used in [ ] *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. And in order to determine how a suspect would have gauged his freedom of movement, courts must examine all of the circumstances surrounding the interrogation. Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence

of physical restraints during the questioning, and the release of the interviewee at the end of the questioning.

*Howes v. Fields*, 565 U.S. 499, 508-09 (2012) (citations and quotations omitted). "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." 565 U.S. at 509.

The Supreme Court has "declined to accord talismanic power to the freedom-of-movement inquiry, and ha[s] instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*. [Supreme Court] cases make clear that the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody." *Id.* at 1189-90. Thus, the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Id.* at 1190. The "custody" determination does not turn on the subjective views of either the interrogating officer or the person being questioned. *See Stansbury v California*, 511 U.S. 318, 323 (1994); *see also Yarborough v. Alvarado*, 541 U.S. 652, 663, 667-69 (2004).

In *Yarborough*, the Supreme Court emphasized that "the custody test is general." 541 U.S. at 665. "Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general rule, the

-15-

more leeway courts have in reaching outcomes on case-by-case determinations." *Id.* at 664. It is not enough for a habeas petitioner to point to some factors weighing in favor of a view that he was in custody. "Differing indications" on custody factors do not undermine a state court's decision, and a habeas court "cannot grant relief under AEDPA by conducting [its] own independent inquiry into whether the state court was correct as a *de novo* matter. A federal court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied the law incorrectly. Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." 541 U.S. at 665 (citations and quotations omitted).

Here, the Michigan Court of Appeals applied the appropriate legal standard, agreed with the trial court's findings that petitioner was not in custody or questioned by Officer Van Dam, and it rejected petitioner's claims that his constitutional rights had been violated. "At the hearing on the motion to suppress, Officer Van Dam testified that he never asked defendant any question and that defendant 'just willingly kind of blab[bed] out a statement.'" (Op., 2, ECF No. 17-10, PageID.1068). Petitioner "was not handcuffed, restrained, or told he was being detained." (*Id.*). There was no Fifth Amendment violation because petitioner was not in custody and he had not been questioned by Officer Van Dam. (*Id.* at 2-3, PageID.1068-69).

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting the claims found in Ground I was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## II.   Confrontation Clause

In Ground II, petitioner argues that the trial court violated his constitutional rights when it permitted the use of Pamela Gathers's preliminary examination testimony.  (Amended Petition, ECF No. 8, PageID.280-87; *see also* Defendant-Appellant's Brief on Appeal at 16-21, ECF No. 17-10, PageID.1117-22).

The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'  [The Supreme Court has] held that this bedrock procedural guarantee applies to both federal and state prosecutions."  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  In *Crawford*, the Supreme Court divided out-of-court statements into two categories: those that are "testimonial" and those that are not.  *Id.* at 50-69.  The Court identified testimonial hearsay as the "primary" concern of the Confrontation Clause. *Id.* at 53.   Testimonial out-of-court statements by a witness is barred under the Confrontation Clause, unless (1) the witness was unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable.  *Id.* at 68.

Petitioner argues that more should have been done to secure Ms. Gathers's presence at trial.  Judge Graves conducted a hearing and held that Ms. Gathers was unavailable for trial.  The Michigan Court of Appeals held that there was a good-faith

effort in its attempt to locate the witness for trial.  "[T]he sheriff's department attempted to find Gathers at three different addresses.  The prosecutor worked with the Muskegon Police Department and the Muskegon Heights Police Department. Detective Keith Stratton and the prosecutor searched for Gathers and knocked on doors looking for her. When Gathers was contacted by telephone, she would not reveal her location and indicated she would not cooperate."  (Op., 3, ECF No. 17-10, PageID.1069).  The state court findings that the witness was unavailable are well supported.  Petitioner has not addressed, much less carried, his burden of presenting "clear and convincing evidence" that is necessary to overcome the presumption of correctness that attaches to factual findings made by Michigan's courts.   28 U.S.C. § 2254(e)(1).   The witness was unavailable for purposes of the *Crawford* rule.

In *California v. Green*, 399 U.S. 149 (1970), the Supreme Court held that there was no Confrontation Clause violation where the witness gave prior testimony at the defendant's preliminary examination and was subject to cross-examination by the defendant's attorney.  *Id.* at 151, 158-68.

The Michigan Court of Appeals applied the Confrontation Clause standards established by *Crawford* and its progeny.  It rejected petitioner's Confrontation Clause argument, finding that petitioner had an opportunity to effectively cross-examine Ms. Gathers during the preliminary hearing.  (Op., 3-4, ECF No. 17-10. PageID.1069-70). The Court of Appeals observed that the Confrontation Clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in

whatever way, and to whatever extent, the defense might wish." (*Id.* at 4, PageID.1070) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)).  The appellate court noted that there were only two times when defense counsel's questioning was limited at the preliminary examination.  On both occasions, counsel's questions were duplicative of questions that he had posed and that Ms. Gathers had already answered.  Petitioner's attorney had the opportunity to effectively cross examine Gathers.  There was no Confrontation Clause violation.  (Op. at 4, PageID.1070).

The Sixth Circuit recognizes that a habeas corpus petitioner faces an uphill battle where, as here, the state court has rejected the petitioner's Confrontation Clause argument based on the petitioner's claim that there was not an adequate opportunity for cross-examination of the witness at the preliminary examination.  "If there is room for reasonable debate on the issue, the state courts decision to align itself with one side of the argument is necessarily beyond this court's power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014); *see Al-Timimi v Jackson*, 379 F. App'x. 435, 437-39 (6th Cir. 2010); accord *Miller v. MacLaren*, No. 1:12-cv-117, 2016 WL 7396701, at *8 (W.D. Mich. Nov. 11, 2016) (collecting cases); *Jones v. Winn*, No. 4:15-cv-12239, 2016 WL 6432696, at *5 (E.D. Mich. Oct. 31, 2016) ("Because there is 'no clearly established [F]ederal law' within the meaning of § 2254(d)(1) contradicting the finding of the state court that cross examination during a preliminary examination hearing satisfies the requirement of Crawford, the court must deny habeas relief on this claim."); *Hurick v. Woods*, No.

2:14-cv-81, 2016 WL 1127971, at *5 (W.D. Mich. Mar. 23, 2016) ("[P]etitioner 'has failed to identify any Supreme Court precedent supporting his contention that his opportunity to cross-examine [the witness] at his own preliminary hearing was inadequate to satisfy the rigors of the Confrontation Clause' " (quoting *Bauman*, 759 F.3d at 635)).

The Court finds that Ground II does not provide a basis for federal habeas corpus relief. Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting Ground II "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III. New Counsel

Ground III is petitioner's claim that the trial court violated his Sixth Amendment rights when it denied his motion for new counsel that he made on the first day of his trial. (Amended Petition, ECF No. 8, PageID.289-91; *see also* Defendant-Appellant's Brief on Appeal at 22-25, ECF No. 17-10, PageID.1123-26).

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

-20-

[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  548 U.S. at 151.

The Supreme Court has not yet articulated a standard for deciding a Sixth Amendment claim based on a habeas petitioner's allegation that the trial court denied his request for substitute counsel. *See Smith v. Berghuis*, 1:10-cv-774, 2016 WL 4472893, at *10 (W.D. Mich. Aug. 25, 2016); *Griffin v. Warden, Noble Corr. Inst.*, No. 2:14-cv-857, 2016 WL 1090960, at *7 (S.D. Ohio Mar. 21, 2016) (collecting cases denying habeas corpus relief based on the absence of any decision contrary to or involving an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States); *accord Woods v. Donald*, 135 S. Ct. at 1377. "[N]ovelty alone–at least insofar as it renders the relevant rule less than 'clearly established'–provides a reason to reject it under AEDPA." *Premo v. Moore*, 562 U.S. at 127.

Here, on the first day of trial, petitioner indicated that he wanted a new attorney. The judge found that petitioner's request was untimely and that none of the grounds on which he sought appointment of new counsel had factual or legal merit. (TT I, 4-7, ECF No. 17-5, PageID.524-27).  The Michigan Court of Appeals held that the trial court did not abuse its discretion when it denied petitioner's request for substitute counsel.  (Op., 4-5, ECF No. 17-10, PageID.1070-71).

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting Ground III was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## IV.   Sentence

In Grounds IV and V, petitioner challenges his sentence.   Ground IV is petitioner's argument that the trial court committed error in scoring offense variable OV-9 under Michigan's sentencing guidelines.  Ground V is his claim that the trial court committed error in sentencing him to eleven to forty years' imprisonment as an habitual offender, fourth felony offense. (Amended Petition, ECF No. 8, PageID.292-305; *see also* Defendant-Appellant's Brief on Appeal at 26-37, ECF No. 17-10, PageID.1127-38).

The Michigan Court of Appeals rejected all petitioner's arguments challenging his sentence.  (Op., 5-7, ECF No. 17-10, PageID.1071-73).  "The trial court did not err when it scored OV 9 at ten points." (*Id.* at 5, PageID.1071).  Defense counsel was not ineffective when he elected against making petitioner's "meritless objection" to the scoring of OV9.  (*Id.*).   Federal sentencing guidelines did not apply.  (*Id.* at 6, PageID.1072). Petitioner's "sentence was within the applicable guidelines range[.]" (*Id.*). The trial court satisfied Michigan's "articulation requirement" and his minimum and maximum sentences were proportionate.   (*Id.*).   The Court of Appeals rejected petitioner's claim that he was entitled to a downward departure from the sentencing guidelines based on an inference that could be made from the Presentence Investigation Report (PSIR) that he had a mental disease or defect.  "[T]he PSIR d[id] not reflect any

mental or current substance abuse issues.  Instead, it reflect[ed] defendant had 'good' mental health and was not currently using substances or in treatment." (*Id.*).  The information in petitioner's PSIR was accurate and complete, and he was not entitled to resentencing.  (*Id.*).

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  Federal habeas corpus relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Petitioner's challenges to his sentence in Ground IV and V are generally state-law claims.  They do not provide a basis for habeas corpus relief.  *See Kissner v. Palmer*, 826 F.3d 898, 902 (6th Cir. 2016); *see also Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).  To the extent that petitioner raised federal claims in Grounds IV and V, he has not shown entitlement to relief under 28 U.S.C. § 2254(d).

The Michigan Court of Appeals held that petitioner had abandoned his claims in Ground V that his sentence was excessive and that counsel was ineffective for failure to object to the length of his sentence.  (Op., , PageID.1073).  Petitioner relies on the same deficient brief in this Court.  (ECF No. 8, PageID.296).  Upon review, the Court finds that petitioner's fragmentary arguments are patently meritless.

The Eighth Amendment does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *see Bonilla v.*

*Lafler*, 501 F. App'x 494, 497 (6th Cir. 2012); *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the "extraordinary case"); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in " 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality' ") (quoting *Harmeline*, 501 U.S. at 1105).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000); *see also Thomas v. Berghuis*, No. 15-1164, 2015 WL 5313636, at * 5 (6th Cir. Sept. 10, 2015); *Hynes v. Birkett*, 526 F. App'x 515, 521-22 (6th Cir. 2013).  Under Michigan law, the maximum sentence for habitual offender, fourth offense, is life imprisonment.  M ICH. C OMP. L AWS § 769.12; *see also Alonzo v. Burt*, 1:14-cv-946, 2016 WL 2864812, at * 9 (W.D. Mich. May 17, 2016); *Broussard v. Romanowski*, 2:13-cv-11120, 2013 WL 5999275, at * 5 (E.D. Mich. Nov. 12, 2013).  Given that petitioner's sentence was far less than the statutory maximum and he has an extensive criminal history, the Court finds that petitioner's sentence withstands scrutiny under Eighth Amendment standards.

Petitioner's related assertion that his counsel was ineffective requires no discussion beyond observing that petitioner's attorney was not required to raise these meritless challenges to his sentence.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007).

In summary, Grounds IV and V do not provide a basis for federal habeas corpus relief.

## V.  Jury Instructions

In Ground VI, petitioner argues that the trial court violated his due process, equal protection, and other protected rights by not instructing the jury on missing evidence and by overruling an objection to the flight instruction given.  (Amended Petition, ECF No. 8, PageID.306-09; *see also* Defendant-Appellant's Brief on Appeal at 38-41, ECF No. 17-10, PageID.1139-42).

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, the petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077-78 (6th Cir. 2015).

The Michigan Court of Appeals rejected petitioner's arguments related to the jury instructions.  It found that petitioner's argument regarding a missing evidence instruction was both waived and meritless.  (Op., 7, ECF No. 17-10, PageID.1073). Petitioner's related claim of ineffective assistance of counsel was equally meritless. There was no request for a missing evidence instruction.  (*Id.*).  The Court of Appeals rejected petitioner's argument that the instruction was necessary because the recording

of petitioner's statements to Officer Van Dam were not produced.  The missing evidence instruction "only applie[d] if the prosecution act[ed] in bad faith when it fail[ed] to produce the evidence.  There [was] no evidence in this case that the prosecution acted in bad faith."  (*Id.*) (citation omitted).  Counsel was not ineffective when he failed a meritless request for a missing evidence instruction.  (*Id.*).

The Court of Appeals also rejected petitioner's arguments regarding the flight instruction was improper.  "The flight instruction is supported when there is evidence that the defendant fled the scene, ran from the police, resisted arrest, attempted to escape custody, or left the jurisdiction.  To provide the flight instruction, there must be some evidence that the defendant 'feared apprehension' when he left the scene.  In this case, there was evidence that after the assault, defendant returned the crowbar to Ashendorf, asked Ashendorf to hide it and not tell anyone, and was in a hurry.  This was evidence that defendant fled, and the flight instruction was properly provided."  (*Id.*) (citations omitted).

The Court finds that Ground VI does not provide a basis for federal habeas corpus relief.  28 U.S.C. § 2254(d).

## VI.    Sufficiency of the Evidence

Ground VII is petitioner's argument that his rights under the Fourteenth Amendment's Due Process Clause were violated because the evidence at trial was insufficient to support the jury's verdict finding petitioner guilty of assault with intent to do great bodily harm less than murder.  Petitioner states that he acted in self-defense,

that his brother testified that he had a knife, and he believes that his trial counsel was ineffective for failure to move for a directed verdict based on petitioner's claim of self-defense. (Amended Petition, ECF No. 8, PageID.311-15; *see also* Standard 4 Brief, 1-6, ECF No. 17-10, PageID.1254-59).

The Michigan Court of Appeals found that petitioner did not present any developed argument on the merits of this claim in his Standard 4 brief, and it deemed the issue abandoned. (Op., 7, ECF No. 17-10, PageID.1073).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial."). Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of

the crime as established by state law. *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

"The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v. Brown*, 703 N.W.2d 230, 236 (Mich. Ct. App. 2005) (quotation and emphasis omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id.* (quotation omitted); *see also People v. Sutton*, No. 328692, 2017 WL 104548, at * 3 (Mich. Ct. App. Jan. 10, 2017). A jury may infer a defendant's intent based on his actions and the circumstances in the case. *People v Lugo*, 542 N.W.2d 921, 927 (Mich. Ct. App. 1995); *accord King v. Wood*, No. 2:14-cv-100, 2016 WL 3124613, at * 2 (W.D. Mich. June 3, 2016).

The evidence, viewed in the light most favorable to the prosecution, was more than sufficient to support petitioner's conviction under the *Jackson v. Virginia* standard. Petitioner "hit Mr. Bateman in the face and head a couple times with a crowbar. Bateman did not have a knife or other weapon. Bateman was in the hospital for six days and was in a coma for four days. Bateman had many injuries in the face and head area, including fractures and bleeding on the brain." (Op. 1, ECF No. 17-10, PageID.1067). The Court cannot substitute its own credibility determination for the jury's, nor can the Court reweigh the evidence. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *Hill v. Mitchell*, 842 F.3d 910, 934 (6th Cir. 2016). Petitioner's disagreement with the jury's

credibility determination with regard to his testimony claiming that he acted in self-defense and his brother's testimony regarding a knife is not a basis for federal habeas corpus relief. *See, e.g., Thomas v. Haas*, No. 15-12015, 2016 WL 1698925, at * 4 (E.D. Mich. Apr. 28, 2016) ("Because the jury essentially chose to reject petitioner's testimony that he acted in self-defense, which is a credibility determination to which this Court must defer, petitioner is not entitled to habeas relief on his sufficiency of evidence claim.").

The Court finds that under the *Jackson v. Virginia* standard, there was more than sufficient evidence on which a reasonable trier of fact could find that all the elements of the crime of assault with intent to do great bodily harm less than murder had been established beyond a reasonable doubt. Further, petitioner's counsel was not required to make a meritless motion for a directed verdict. Ground VII does not provide a basis for federal habeas corpus relief.

## VI.   Rulings Made by the Michigan Court of Appeals Regarding Petitioner's Requests for Oral Argument and an Evidentiary Hearing

In Ground VIII, petitioner argues that the Michigan Court of Appeals committed error in denying his motion for remand for an evidentiary hearing. Ground IX is petitioner's claim that the Michigan Court of Appeals committed error in denying his appellate attorney's motion for oral argument on the issues that counsel raised on direct appeal. (Amended Petition, ECF No. 8, PageID.316-27; *see also* ECF No. 17-10. PageID.1145-60, 1262-68).

Grounds VIII and IX do not provide a basis for federal habeas corpus relief.  The Michigan Supreme Court has supervisory power over the Michigan Court of Appeals. This Court does not.  Grounds VIII and IX are state law claims.  *See, e.g., Hawkins v. Woods*, 651 F. App'x 305, 309 (6th Cir. 2016); *Poindexter v. Jones*, No. 1:05-cv-833, 2008 WL 5422855, at * 21 (W.D. Mich. Dec. 30, 2008).  Federal habeas corpus relief is available to a person in custody pursuant to the judgment of a State court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## III.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong. *See Slack*, 529 U.S. at 484.  Accordingly, the Court will enter an order denying petitioner a certificate of appealability.

### **Conclusion**

For the foregoing reasons, the habeas corpus petition will be denied.

Dated:   February 23, 2017          /s/ Pual L. Maloney
                                    Paul L. Maloney
                                    United States District Judge